(92 South. 132)

No. 23458.

KOHLMAN v. NEW YORK LIFE INS. CO.

(April 24, 1922. Rehearing Denied May 29, 1922.)

*(Syllabus by Editorial Staff.)*

1. Insurance ☞665(6)—Facts and circumstances must point to exclusion of every other reasonable hypothesis.

Suicide is not presumed, and, when an action on an insurance policy is defended on that ground, the facts and circumstances proved must point to voluntary self-destruction to the exclusion of all other reasonable hypotheses.

2. Insurance ☞665(6)—Evidence held to establish defense of suicide.

Evidence in an action on a life insurance policy *held* to establish the defense of suicide by a preponderance of the evidence.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Mrs. Jeannette M. Kohlman against the New York Life Insurance Company. From a judgment for plaintiff, defendant appeals. Judgment avoided and reversed, and judgment rendered for defendant.

Richard B. Montgomery, of New Orleans, for appellant.

Charles Rosen, of New Orleans, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

LECHE, J. Defendant appeals from a judgment condemning it to pay plaintiff the sum of $5,000 with interest and costs, the amount of an insurance policy written by defendant on the life of the late S. J. Kohlman, and in favor of plaintiff.

The policy was issued on December 3, 1913, and the insured, S. J. Kohlman, died on August 6, 1914. Payment of loss is resisted on the ground that the insured committed suicide within one year of the date of the policy, and that the defendant is absolved from all liability, except for premiums received, by virtue of the following clause contained in the policy:

"In event of self-destruction during the first insurance year, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premiums thereon which have been paid to and received by the company, and no more."

Defendant tendered the amount of the premium which it had received from the insured, but plaintiff, contending that the insured had not committed suicide, refused to accept the tender, and brought the present suit for the face value of the policy.

The case involves a question of fact, and was tried by a jury, nine of whom concurred in finding a verdict in favor of plaintiff, and defendant has appealed.

The insured, S. J. Kohlman, was found dead in his office, on the seventh floor of the Inter State Bank Building (the old Morris Building), in the city of New Orleans, about 5:30 in the afternoon of August 6, 1914. He was lying on his back on a couch or settee, his left arm over his chest and his right arm hanging down the side of the couch. On the floor near the couch was a tumbler which had contained carbolic acid, and in a chest near the wall was found a small bottle which also had contained carbolic acid. The label had been cut and scratched off the bottle; the pieces, however, were found scattered behind the couch on the floor, were put together, and showed the contents had been bought from Williams' drug store at Canal and Bourbon streets. Carbolic acid burns were found on the mouth, chin, and face of the deceased. Everything in the room was found in apparent order, and there were no signs of any disturbance of the furniture. On the desk in the office were some written papers, but nothing was seen by the police or the coroner having any

bearing upon the intentions of the deceased, if he in fact intended to take his own life. The coroner viewed the body, gave a certificate of death by suicide, and the body was turned over to relatives of the deceased. Further investigation showed that Kohlman had left his office about noon, had gone out to Williams' drug store, had bought a three-ounce vial of carbolic acid, and had returned to his office about 1 o'clock or shortly thereafter. In going up the elevator he cautioned the elevator boy that as he was going to lie down, not to let anybody come in, as he did not want to be disturbed. .

The deceased had lived in New Orleans for many years. He had been married twice. By his first wife he had one son, who is said to be a practicing attorney in the state of New York. By his second wife, who is plaintiff in this case, and whom he had married about the year 1890, he had another son who was a college student at the time of his death. He had a large circle of acquaintances, and at one time had been chairman of the Democratic committee, and was prominent in politics. He was sociable, and usually of a cheerful disposition, a man of pride, and yet jovial in his temperament. His home life was exemplary. He was a good husband and a kind father, and much attached to his family. He provided for his wife and younger son, and lived very comfortably.

He had for many years suffered from headaches and irritation of the throat. He had often used drugs, taking chloral, antikamnia, and neurodine for headache, and had used carbolic acid in solution as a gargle for his throat. His wife says that he once took an overdose of chloral, which caused him to get into a stupor, but that took place about 12 years before his death. These ailments of the head and of the throat, however, were not declared by the insured in his application for the insurance involved in this case, and, although it is stated that on one occasion he had mentioned his head and throat troubles to Dr. Gaudet, his personal friend, it does not appear that he ever took any treatment through a physician. In fact he generally bought drugs on his own personal order at the drug store of Mr. Williams, with whom he was well acquainted.

We deduce from all the testimony in the record that deceased, like many persons, suffered occasionally from his head and throat, but that these indispositions were never of a serious nature, and that he was thoroughly familiar with the medical properties of the drugs which he used in treating himself.

[1] Owing to the natural instinct implanted in man (as in all animals) to shun and avoid suffering, and to preserve life, the universally accepted principle of law is that no one is presumed to wantonly hurt or destroy himself, and therefore that, in a defense on the ground of suicide, the facts and circumstances proved must point to the voluntary self-destruction of the insured to the exclusion of all other reasonable hypotheses.

[2] In this case there is no doubt that the accused died of carbolic acid poisoning, and that the poison was administered to him by his own hand.

We have searched in vain for a reasonable hypothesis to account for the death of the insured outside of intended self-destruction, but confess that we see none.

Plaintiff suggests as a reasonable hypothesis that the insured might have taken an overdose of chloral, and while in a stupor, under the influence of that drug, that he attempted to gargle his throat with pure carbolic acid, and accidently poisoned himself. In our opinion the facts and circumstances in the case exclude the reasonableness of the suggested hypothesis. Deceased was undoubtedly familiar with the effects of chloral. He had previously suffered from an overdose of that drug. There is no suggestion of any chloral or a container of chloral being found

near the body or even in the office. He must have been equally well aware of the fatal effects of the internal use of carbolic acid, as a frequent user of that drug. It is not reasonably conceivable that he would have taken an overdose of either chloral or carbolic acid except for the purpose of destroying his own life.

Again, it is more reasonable, that, in his pride, his love for his family, his straitened financial circumstances, the fair amount of insurance which he carried on his life, he should have sacrificed his life to provide for his family.

It is shown that, although he was supposed to be a real estate broker, few, if any, people called on him at his office; that his callers were mostly bill collectors; that his bank account was often overdrawn, and that when he died he had overdrawn his account to the amount of $40; that he owed a fuel bill for his home; that he owed rent for his office; that when he went up the elevator he remarked to the elevator boy, on hearing some one indulge in a loud laugh, he "wished he could laugh free-hearted like that." It is also strange that he should have asked the elevator boy on his last trip in that elevator not to let any one disturb him, although such a circumstance by itself might not amount to one indicating an intention to destroy himself.

It is also shown that in his application for insurance the deceased stated that he then had life insurance in the defendant company in the sum of $7,500, in the Travelers,' $2,000, and in the Postal, $10,000. Plaintiff stated in one part of her evidence that she had received $15,000 from the Postal Insurance Company, which had promptly paid the loss. In another part she says that she had collected $10,000 from that company. The last statement corresponds with the written application for the insurance in contest. Plaintiff also says that her husband had obtained loans of over $4,000 on the

other policy of $7,500 in defendant company, and that the balance was payable to the son by first marriage, living in New York. It appears, in addition to the loan of $4,000 obtained by the insured, that the home which was then occupied by insured and his family belonged to plaintiff as her separate property, and that this property had been mortgaged, the mortgage increased, and that eventually the same was sold in foreclosure proceedings.

We believe the record fully sustains the theory that the insured was in such straitened financial circumstances as to serve as a motive for his act of self-destruction.

We believe that defendant has established its defense by a preponderance of evidence, and, so believing,

It is ordered that the judgment appealed from be avoided and reversed and that judgment be now rendered in favor of defendant; plaintiff to pay all costs.

On Application for Rehearing.

By the WHOLE COURT.

PER CURIAM. The decree is amended by allowing plaintiff the premium of $388.45 deposited by defendant in the registry of the court, and the judgment as amended is affirmed.

Rehearing refused.